IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAMON JOHNSON, 1424434, )
    Petitioner, )
     )
    v. ) 2:11-cv-293
     )
JEFFERY DILLMAN, et al., )
    Respondents. )

MEMORANDUM and ORDER

Mitchell, M.J.:

Ramon Johnson, an inmate at the Green Rock Correctional Center in Chatham, Virginia, has presented a petition for a writ of habeas which he has been granted leave to prosecute in forma pauperis. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Johnson is presently serving a twenty to forty year sentence imposed following his conviction by a jury of rape, involuntary deviate sexual intercourse, indecent assault and simple assault at No. 200211596 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on September 2, 2003.[1] An appeal was taken to the Superior Court in which the questions presented were:

    I.    When the defense is that someone else raped the complainant and DNA evidence matches someone other than the defendant, can the Rape Shield Law be used to violate the defendant's rights to present a defense, to confront witnesses, and to due process by precluding the jury from hearing this evidence?
    II.    (A). When imposing consecutive, statutory-maximum sentences, must the sentencing court state sufficient and appropriate reasons for [ ] why it deemed consecutive sentences necessary?

---

[1] See: Petition at ¶¶1-6 and p.3 of Commonwealth's Exhibit 1.

II. (B). Is a sentence clearly unreasonable and manifestly excessive when it is comprised of consecutive, statutory-maximum sentences for what is essentially they typical type of crime for these charges?[2]

On January 26, 2005 the Superior Court affirmed the judgment of sentence.[3]

A petition for allowance of appeal was filed in which the following issues were raised:

I. When the defense is that someone else raped the complainant and DNA evidence matches someone other than the defendant, can the Rape Shield Law be used to violate the defendant's rights to present a defense, to confront witnesses, and to due process by precluding the jury from hearing this evidence?

II. Is Superior Court correct that this Court's cases that pre-date DNA testing no longer control whether evidence is admissible in a Rape-Shield-Law case?

III. In determining whether evidence is admissible, is Superior Court correct that the standard should be that the evidence is proof of the defendant's innocence or should the standard instead remain one of relevance?[4]

On April 18, 2006, leave to appeal was denied[5] and certiorari was denied by the United States Supreme Court on October 2, 2006.[6]

On April 25, 2007, Johnson filed a timely post-conviction petition.[7] That petition was dismissed without a hearing on June 17, 2008.[8] An appeal was filed in the Superior Court in which the issues presented were:

I. Whether trial counsel gave ineffective assistance for failing to object to the testimony of facts surrounding Appellant's arrest?

II. Whether trial counsel gave ineffective assistance for failing to question Mary Brown at trial about being on probation at the time of the alleged offense?

---

[2] See: Answer of the Commonwealth at p.335. All answer record references are to the "Bates" numbered pages and not the document numbered pages.
[3] Id. at pp.417-429.
[4] Id. at p.442.
[5] Id. at p.495.
[6] Id. at pp. 496 and 577.
[7] Id. at pp. 578-595. Although docketed on April 25, 2007, the petition is dated April 18, 2007 (See: Answer at p.595)
[8] Id. at p.644.

> III. Whether trial counsel gave ineffective assistance for failing to object to the prosecutor's closing arguments?[9]

On September 23, 2009, the denial of post-conviction relief was affirmed.[10] Leave to appeal to the Pennsylvania Supreme Court raising these same issues was sought and subsequently denied on September 8, 2010.[11]

The instant petition was executed on March 2, 2011, and in it, petitioner contends he is entitled to relief on the following grounds:

1. The exclusion of evidence of another's DNA because of the Rape Shield Law violated Mr. Johnson's constitutional right to due process and present a defense. Trial Judge did not allow jury to see or hear exculpatory evidence that would exonerate petitioner, thus violating petitioner's due process rights.

2. The consecutively imposed statutory maximum sentences should be vacated because they were imposed without sufficient reason for the need of consecutive sentences. Only one sentence should have been imposed. The crimes of rape [and] IDSI merge for sentencing purposes. Trial judge sentenced petitioner to the statutory maximum without sufficient reason.

3. Violation of petitioner's 6th Amendment right to counsel. Trial counsel failed to object to the testimony of the facts surrounding petitioner's arrest.

4. Violation of petitioner's Sixth Amendment right to counsel . Trial counsel failed to question Commonwealth's witness in regards to being on probation for a prostitution charge. Counsel never challenged accus[or]'s credibility.

5. Violation of petitioner's Sixth Amendment right to counsel. Trial counsel was ineffective for failing to object to the prosecution's closing arguments.[12]

The factual background to this prosecution is set forth in the January 26, 2005 Memorandum of the Superior Court.

> On July 22, 2002, in Braddock, Allegheny County, Pennsylvania, Appellant attempted to gain sexual favors from the complainant, Mary Brown, who, at the time, was addicted to crack cocaine and had been in the practice of exchanging

---

[9] Id. at p.667.
[10] Id. at pp.718-727.
[11] Id. at pp.739, 778.
[12] See: Petition at ¶ 12.

3

sex for money or cocaine. As Appellant did not possess the crack Ms. Brown craved, Appellant pretended to have two rocks of crack cocaine. The encounter that followed led to the filing of rape charges against Appellant, and ultimately to his conviction…

Prior to the encounter in question, Appellant had been inside a house overlooking Braddock Avenue and observed Ms. Brown below him on the street talking to a woman Appellant knew. Appellant came out of the house and engaged Ms. Brown in conversation. The two talked briefly, struck a bargain and proceeded down an alleyway looking for a more private location where the deal could be consummated. On these salient points, both parties generally agree. However, their accounts of the event of that evening diverge from this point forward.

According to Appellant, after the two reached a secluded spot in the alleyway, the complainant began to perform oral sex upon him. After performing fellatio upon Appellant for several minutes, the complainant stopped and tasted the substance Appellant had passed off as crack and became doubtful that the substance was cocaine. Appellant assured Ms. Brown that the substance was cocaine. Apparently Ms. Brown remained skeptical as, after she resumed her prior activity, she unexpectedly bit Appellant's penis hard enough to break the skin. Enraged over this affront, Appellant responded by striking Ms. Brown two or three times in the face with his open hand. The two then exchanged angry words and the complainant threated Appellant with unspecified retaliation for his subterfuge. Appellant then left the alleyway where he observed another man enter the alley and begin addressing Ms. Brown. The next day, Appellant found himself the focus of a rape investigation.

According to Ms. Brown, upon arriving at a porch located in the alleyway, she demanded to be "paid" by Appellant before beginning any sexual activity. Appellant replied that he would "take care of her." However, Ms. Brown remained adamant that she be paid first stating "Yeah, well, I heard that before." Appellant then pulled out a baggie tied around two stones or rocks of purported crack cocaine. Ms. Brown did not like the look of the two rocks and pulled one out and tasted it whereupon she concluded that the rocks were not crack cocaine. Ms. Brown, protesting that they were not real, then told Appellant she did not want the rocks. Appellant then punched Ms. Brown in the face and told Ms. Brown that she was going to do what he said and she would stay as long as he wanted her to. Appellant then pulled his penis from his pants and told Ms. Brown to "give him head."

Because she was afraid of Appellant, Ms. Brown did as requested and began performing fellatio upon Appellant. As she did, she was crying which prompted Appellant to tell her to be quiet and do as she was told. Despite being warned to be quiet, Ms. Brown continued to cry. In response to the continued crying, Appellant stated "I know you ain't still making noise," and then hit Ms. Brown again. Appellant then ordered Ms. Brown to remove her clothes. After she

complied, Appellant ordered Ms. Brown to turn around whereupon Appellant inserted his penis in here vagina and proceeded to engage in sexual intercourse. While Appellant continued to thrust himself inside her, Ms. Brown continued to cry, prompting Appellant to strike her once more in the face.

Appellant then ordered Ms. Brown to bend over further so that he could engage in anal intercourse. In response to this request, Ms. Brown turned and faced Appellant and began pleading for him not to hurt her. Appellant then pushed Ms. Brown down and began to choke her. Ms. Brown struggled free, scrambled to the edge of the porch and jumped down over the railing to a recessed area below the ground level. In pain from the fall, Ms. Brown crawled up the stairs to the ground level only to be kicked by Appellant who had made his way down from the porch. At this point, Ms. Brown could see down the alleyway to Braddock Avenue. Ms. Brown observed a man and screamed for help. When she turned back in the direction where Appellant had been, Appellant was gone. Ms. Brown got up and ran, naked, into the street where she came across a police car. The police stopped and helped Ms. Brown into the police car. Ms. Brown was later transported to the hospital where she received treatment for her injuries…

While hospitalized, a rape kit test was conducted upon Ms. Brown. The results revealed no physical evidence linking Appellant to Ms. Brown. However, semen was found inside Ms. Brown which DNA test results excluded Appellant as a possible donor. Despite the absence of physical evidence linking Appellant to a sexual assault upon Ms. Brown, Appellant was subsequently arrested and charged, *inter alia*, with rape, IDSI, and aggravated assault… prior to trial, on May 2, 2003, in anticipation that Appellant intended to use the results of the rape test kit, namely the presence of another's semen in the complainant's vagina, in his defense, the Commonwealth filed a motion *in limine* seeking to bar introduction of that evidence pursuant to the Rape Shield Law. The Commonwealth's motion was granted on May 5, 2003. At the conclusion of the trial, Appellant was convicted of the aforementioned charges and was acquitted of aggravated assault.[13]

It is provided in 28 U.S.C. § 2244(d)(1) and (d)(2) that:

(1) A 1-year period of limitation shall apply to the application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[13] See: Answer of the Commonwealth at pp.418-422.

(C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The effective date of the Antiterrorism and Effective Death Penalty Act which imposed the one year statute of limitations is April 24, 1996 and thus it is applicable here. In the instant case, certiorari was denied by the United States Supreme Court on October 2, 2006. The petitioner did not seek post-conviction relief until at the earliest April 18, 2007 or 198 days after he could have done so. Post-conviction relief was denied and leave to appeal that denial was denied by the Pennsylvania Supreme Court on September 10, 2010. The instant petition was executed on March 2, 2011 or 173 days after the determination of the Pennsylvania Supreme Court. Thus, combining the 198 day delay in initially seeking post-conviction relief with the 173 day delay in seeking relief here, a total of 371 days elapsed which is in excess of the one year statutory limitations period. For this reason, the petition here is time barred.

However, although we conclude that the instant petition should be dismissed, we proceed further to examine the petition.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations

must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving

7

"materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

The petitioner's first and second issues here were presented to the appellate courts of the Commonwealth in his direct appeal. His third, fourth and fifth issues were presented to the Pennsylvania appellate courts in his appeal from the denial of post-conviction relief. Although the Commonwealth correctly alleges that while all these claims were presented to those courts, only issues one, three and four were presented as federal constitutional claims and his second and fifth issues were not so presented and for this reason, the latter two claims are not properly before this Court. Duncan v. Henry, 513 U.S. 364 (1995).

Nevertheless, since all the issues which he seeks to raise here can be readily disposed of, they will all be addressed.

The petitioner's first issue is that evidence that the source of the semen recovered from the victim's vagina was not from the plaintiff, and as a result should not have been excluded by the court under the Rape Shield Law, 18 Pa.C.S.A. 3104[14], resulting in a due process violation. The trial court in excluding this evidence did permit a criminologist to testify that the DNA recovered from the victim's vagina did not match the petitioner.[15] The Superior Court noted the petitioner's argument as being "if Appellant did not rape the complainant, then either the woman was not raped at all or she was raped by another man."[16] The Superior Court went on to explain, that this evidence merely demonstrated

---

[14] 18 Pa.C.S.A. 3104 provides:
Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in the prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.
This same prohibition is provided for in F.R.Evid. 412.
[15] At trial, the victim testified that the petitioner did not have an orgasm during the vaginal intercourse (N.T. 5/0-7/03 at p.64).
[16] See: Answer of the Commonwealth at p.424.

8

that the victim had had sexual relations with another individual and in no way excluded the petitioner as her rapist.[17] Thus, any defense advantage that might have been gained, but for the Rape Shield Law, was secured by the trial court permitting testimony that the source of the semen recovered from the victim was not the plaintiff.

Absent fundamental unfairness, state court evidentiary rulings do not provide a basis for habeas corpus relief. Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir.2006); Ault v. Waid, 654 F.Supp.2d 465 (N.D.W.Va.2009). In the instant case, the imposition of the Rape Shield Law did not implicate a due process violation in light of the fact that the court permitted the defense to present evidence that the semen recovered from the victim did not originate from the petitioner. Thus, this claim does not provide a basis for relief here.

The petitioner's second claim is that his sentences should not have been imposed consecutively. An imposed sentence does not provide a basis for federal habeas corpus relief unless that sentence exceeded the statutory maximum provided by law. LaBoy v. Carroll, 437 F.Supp.2d 260 (D.Del.2006). In the instant case, the petitioner was convicted of and sentenced on charges of rape, 18 Pa.C.S.§3121, and involuntary deviate sexual intercourse, 18 Pa.C.S.§3123, both which are first degree felonies punishable by terms of imprisonment of up to twenty years, 18 Pa.C.S.§1103(1). In Pennsylvania, the determination of whether or not the sentences are to be served concurrently or consecutively is left to the discretion of the sentencing court. Com. v. Hoag, 665 A.2d 1212 (1995). In addition, as a recidivist as determined by 42 Pa.C.S.A. §9714(a)(1), based on his prior record, the minimum sentence which the court could have imposed was ten years. Thus, there is no showing here that the twenty to forty year sentence imposed exceeded the statutory maximum and Johnson's claim to the contrary does not provide a basis for relief here.

Petitioner's third, fourth and five claims involve the alleged ineffective assistance of counsel.[18] In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance

---

[17] Id.
[18] We note that this latter issue is indirectly addressed by the waiver of the exhaustion requirement here.

was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

In his third claim, Johnson contends that counsel was ineffective for failing to object to the testimony of the events surrounding his arrest. Specifically, petitioner challenges the testimony of Detective Lewis who testified concerning the circumstances at the time of the petitioner's arrest when he was located nude in a closet located in a room in which a child was on a mattress (N.T., 5/7/03 at p.82). Based on this testimony, the Superior Court concluded that it was relevant and properly admissible to establish a consciousness of guilt.[19] Under federal law such evidence is likewise admissible. F.R.Evid.403. For this reason counsel cannot be deemed ineffective for failing to object to its introduction.

The petitioner next contends that counsel was ineffective for failing to challenge the victim's credibility specifically for failing to question her about her previous prostitution conviction and the fact that she was on probation for prostitution. Such questioning is not permitted under the Pennsylvania Rape Shield Law as well as under F.R.Evid.412. Additionally, the fact that the victim was a prostitute and a crack cocaine abuser was known to the jury (NT. 5/7/03 at pp.58-65). For this reason, counsel cannot be deemed ineffective for failing to adduce additional evidence regarding the victim's sexual proclivities since the substance of that evidence was before the jury and his attempts to

---

[19] Id. at p.721.

10

introduce further evidence on the matter would have been denied. Counsel cannot be deemed ineffective for failing to engage in a futile act. See: Real v. Shannon, 600 F.3d 302 (3d Cir.2010).

The petitioner's final claim is that counsel was ineffective for failing to object to the prosecution's closing argument. Specifically in this regard he raises the issue in the manner in which it was raised in his post-conviction appeal brief:

> [Prosecutor]… Who knows? Perhaps he thought maybe she [the victim] wouldn't even report it. She's a prostitute. The police wouldn't even believe her. Well, he was wrong about that because the police did their job in this case. They believed her. They helped her and they made sure the case got in the hands of the detectives who also believed her and helped her and investigated his case because she is as entitled to the protection of the law as any other citizen of the Commonwealth.[20]

That is, the prosecutor interjected her belief that the police credited the victim's account of events.

Petitioner now argues that counsel was ineffective in failing to challenge this argument. In United States v. Young, 470 U.S.1,11 (1985), the Court instructed that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." It is only where the alleged prosecutorial misconduct so infects the trial as to result in fundamental unfairness, that a basis for relief arises. Darden v. Wainwright, 477 U.S. 168 (1986). That is, one must view the prosecutor's action in context and in the light of the entire trial gauging the severity of the conduct and the effect of any curative instructions. Moore v. Morton, 255 F.3d 95,107 (3d Cir.2001)("reviewing courts must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant"). In the instant case the trial

---

[20] Id. a p.687.

court instructed the jury that counsel's argument was merely argument and not substantive evidence, and the resolution of credibility, which was the key issue before the jury, was the exclusive province of the jury.[21] In this context and in light of the evidence educed at trial, one cannot conclude that counsel was ineffective for failing to object to that portion of the prosecutor's closing argument and for this reason defense counsel cannot be deemed ineffective.

Because the petition here is time barred; the petitioner has failed to raise in state court federal issues on his second and fifth issues, and on its face the entire petition lacks merit in that it fails to establish any violation of clearly established federal law as determined by the Supreme Court, the petition of Ramon Johnson for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

---

[21] Id. at pp.250-253.

ORDER

AND NOW, this 31st day of May, 2011, for the reasons set forth in the foregoing Memorandum,

IT IS ORDERED that the petition of Ramon Johnson for a writ of habeas corpus is dismissed,

AND IT IS FURTHER ORDERED that a certificate of appealability is denied.

> s/ Robert C. Mitchell
> United States Magistrate Judge